Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Hilary Harris, State Bar No. 339697
E-Mail: hharris@hurrellcantrall.com
HURRELL CANTRALL LLP
725 S. Figueroa Street, Suite 3800
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for MICHEL MOORE, J. PETERS, E. MURO, CLARK, N. CHACON and BEN MCPHEETERS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| G. ASHLEY,<br><br>Plaintiff,<br><br>v.<br><br>MICHEL RAY MOORE, ERIC MICHAEL GARCETTI, GILBERT CEDILLO, PAUL KREKORIAN, ROBERT BLUMENFIELD, NITHYA RAMAN, PAUL KORETZ, NURY MARTINEZ, MONICA RODIGUEZ, MARQUEECE-HARRIS, MARK RIDLEY-THOMAS, MICHAEL JOSEPH BONIN, JOHN LEE, MITCH O'FARRELL, KEVIN DE LEON, JOSEPH BUSCAINO, WILLIAM J. BRIGGS II, EILEEN DECKER, DALE BONNER, MARIA LOU CALANCHE, STEVE SOBOROFF, LAPD OFFICERS J. PETERS 37707, E. MURO 36863, CLARK 39587, N. CHACON, B. McPHEETERS 30483, and 10 UNKNOWN NAMED DEFENDANTS, 1-10,<br><br>Defendant. | Case No. 2:22-cv-04909-DMG (KSx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF CHIEF MICHEL MOORE AND DEFENDANT CHIEF MICHEL MOORE'S MOTION FOR PROTECTIVE ORDER; DECLARATION OF HILARY HARRIS, ESQ. AND EXHIBITS; AND [PROPOSED] ORDER**<br><br>**DISCOVERY MATTER: HON. KAREN L. STEVENSON** |

/ / /

/ / /

**TO THE HONORABLE MAGISTRATE JUDGE KAREN L. STEVENSON:**

**JOINT COMPLIANCE WITH FRCP R. 33 AND LOCAL RULE 37-1.**

On February 10, 2023, Plaintiff served a FRCP R. 30 Notice of Deposition of Defendant Chief Michel Moore via facsimile unilaterally setting the deposition for March 1, 2023.

On February 16, 2023, in a 4-page letter, Defendant Chief Moore objected to the Notice and advised that he would seek a protective order and requested to meet and confer asserting that the "deposition of Chief Moore in this case was unnecessary and improper," and provided legal authority arguing that there is no good cause to depose Chief Moore as he "has no personal knowledge of the events of September 9, 2019" setting forth legal authority supporting his assertions.

On February 27, 2023, the parties complied with Local Rule 7-3, Rule 37-1, and conferred regarding this matter discussing both facts and authority for his respective position set forth in the letter the parties exchanged. The conference was to no avail.

On February 28, 2023, Plaintiff sent Defense counsel Plaintiff's portions of a joint stipulation to compel. Defense counsel reminded Plaintiff's counsel that an informal discovery conference was required with this court, prior to litigating any discovery matters through briefing. Only then did Plaintiff's counsel email this court's clerk requesting an informal discovery conference.

On March 3, 2023, at 3:00 p.m., all parties participated in a telephonic conference with this court regarding these discovery disputes. The Court asked for all parties to brief the matter for her review and ruling.

On March 12, 2023, without notice to Defendants and without giving Defendants time as required by the Local Rules to include their portions of the Joint Stipulation, Plaintiff filed his motion to compel.

Defendants now file their opposition to Plaintiff's motion.

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

The parties did not resolve their dispute. Chief Moore objects to being deposed and seeks a protective order.

DATED: March 16, 2023 HURRELL CANTRALL LLP

By: */s/ Hilary Harris*
THOMAS C. HURRELL
HILARY HARRIS
Attorneys for MICHEL MOORE, J. PETERS, E. MURO, CLARK, N. CHACON and BEN MCPHEETERS

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTORY STATEMENT

This matter arises from an incident that occurred on September 9, 2019. On that date, Los Angeles Police Department Officers Peters and Muro effectuated a traffic stop of Plaintiff Gregory Ashley for vehicle code violations. Plaintiff pulled over and initially complied with the Officers' orders to roll down his window, but he refused to step out of the vehicle. Officers observed Plaintiff making furtive movements in the front seat and called for backup and a supervisor. Officers believed Plaintiff may be concealing a weapon. After saying he refused to exit his vehicle, Plaintiff exited his vehicle, rolled up the windows, locked the door, and walked up to the front of the vehicle. Backup Officers Chacon and Clark then arrived. Plaintiff was ordered to face a wall and put his hands behind his back. Plaintiff was advised that if he continued to disobey orders, reasonable force might be used on him. Officers Peters and Chacon attempted to handcuff Plaintiff, who physically resisted their efforts. The Officers believed Plaintiff might escape and/or harm them. After several warnings and continued resistance from Plaintiff, Officer Chacon used his taser on Plaintiff, using first the prongs and then in drive-stun mode within the same 5-second cycle. Officers Peters and Chacon eventually used a team-takedown maneuver to control Plaintiff, as well as the use of their knees in his back. However, Plaintiff continued to resist, so Officer Clark used his taser which caused Plaintiff to finally stop resisting. The Officers handcuffed Plaintiff and placed a hobble device on his legs. Officer Chacon suffered deep scratches to his right hand.

After Plaintiff was transported to the hospital via ambulance, one of the non-defendant responding Officers saw prescription promethazine, hydrochloride, and codeine phosphate syrup in plain view inside his vehicle. Officer McPheeters then conducted a search of Plaintiff's vehicle and discovered methamphetamine, methamphetamine paraphernalia, a loaded Glock firearm, ammunition, and a court document with Plaintiff's name on it. Plaintiff is a convicted felon, making possession

of the firearm a felony.

Defendant Chief Moore was not present at the incident of September 9, 2019, has no personal knowledge concerning the incident, and had no direct supervisory role over any of the individual defendants.

Plaintiff's Operative Complaint includes ten causes of action, each one asserted against all Defendants, including Chief Moore. Plaintiff's claims include: (1) 42 U.S.C. § 1983 alleging Fourth Amendment violations; (2) 42 U.S.C. § 1983 claim alleging conspiracy; (3) 42 U.S.C. § 1983 alleging *Monell* liability; (4) 42 U.S.C. § 1985(3) claim alleging conspiracy; (5) 42 U.S.C. § 1983 alleging interference with access to federal courts; (6) *jus cogens* international law; (7) *jus dispostitivum* international law; (8) 42 U.S.C. § 1983 alleging malicious prosecution; (9) RICO claim; and (10) a request for class action certification.

Since the commencement of this action, Plaintiff has served on Defendants no less than five sets of Requests for Production of Documents and four sets of Interrogatories; the majority of which Plaintiff propounded before he was allowed to do so. Plaintiff prematurely noticed the deposition of Chief Moore on November 23, 2022 only to rescind that notice. Plaintiff has re-noticed the depositions of Chief Moore, Officer Peters, Officer Muro, Officer Clark, Officer Chacon, and Officer McPheeters. Plaintiff unilaterally set the date without conferring as to availability of counsel and Defendants. Plaintiff noticed all depositions to be conducted in person at Plaintiff's counsel's home residence. Defendants have responded to all of Plaintiff's written discovery requests, produced all documents responsive to the requests for production, and will be producing Officers Peters, Muro, Clark, Chacon, and McPheeters for deposition. Requiring Chief Moore to be deposed would be cumulative and duplicative, and is designed primarily to annoy, oppress, and unduly burden Defendant Moore and creates unnecessary delay and needlessly increase the cost of litigation.

On February 10, 2023, Plaintiff served on Defense counsel Plaintiff's Notice

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

of Deposition of Defendant Michel Moore via facsimile. Counsel for Chief Moore met and conferred with Plaintiff's counsel and explained that there was no good cause for taking Chief Moore's deposition because he has no personal knowledge regarding the events of September 9, 2019, nor was he personally involved in those events. Moreover, none of the evidence produced by the parties thus far in this case indicates that Chief Moore possesses firsthand knowledge of any facts relevant to the determination of this case, or that he possesses any information that cannot be more expediently obtained from some other source. Defense counsel observed that heads of government agencies are not normally subject to deposition. See *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979). Defense counsel asserted that, absent good cause justifying the deposition, Defendants would move for a Protective Order. Plaintiff failed to explain what information, if any, Chief Moore possessed regarding this matter that justified his deposition and pressed his demand for a deposition.

It is undisputed that Chief Moore is the head of the Los Angeles Police Department, one of the largest law enforcement units in the country, employing over 12,000 individuals and charged with protecting millions of people daily. Chief Moore commands the largest Police Department in the United States with law enforcement services provided to 21 divisions within Los Angeles, in addition to various specialized tactical divisions, such as SWAT. As Chief of Police, he delegates the supervision of day-to-day operations to others within the department, including Deputy Chiefs, Commanders, and Captains, etc. Further, setting such precedent, merely based on the fact that Chief Moore is the highest in command at the LAPD, would open the door to permitting his deposition every time the LAPD is named as a defendant in litigation, which would effectively preclude him from tending to his official duties.

Defendants now seek a Protective Order prohibiting the unnecessary and unjustified deposition of Chief Moore from going forward.

/ / /

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

## II. OVERVIEW OF THE CASE

This case arises from a use of force incident involving Officers Peters, Muro, Clark, Chacon, and McPheeters. Officers Peters and Muro effectuated the traffic stop of Plaintiff, and Officers Clark, Chacon, and McPheeters arrived on scene as backup. Due to Plaintiff's resisting, Officer Chacon used his taser on Plaintiff, using first the prongs and then in drive-stun mode within the same 5-second cycle. Officers Peters and Chacon eventually used a team-takedown maneuver to control Plaintiff, as well as the use of their knees in his back. However, Plaintiff continued to resist, so Officer Clark used his taser which caused Plaintiff to finally stop resisting. The Officers handcuffed Plaintiff and placed a hobble device on his legs. Officer McPheeters then conducted an inventory search of Plaintiff's car and discovered prescription promethazine, hydrochloride, codeine phosphate syrup, methamphetamine, methamphetamine paraphernalia, a loaded Glock firearm, ammunition, and a court document with Plaintiff's name on it. Plaintiff is a convicted felon, making possession of the firearm a felony.

There is no dispute among the parties that Chief Moore was not present during the events of September 9, 2019, has no personal knowledge regarding those events, and had no direct supervisory role over any of the individuals involved in the incident.

Plaintiff argues that the deposition of Chief Moore is necessary to obtain information relevant to his alleged claims that cannot be obtained from any other source. Plaintiff's argument fails, however, to identify a specific constitutional violation relating to the facts of this matter concerning which Chief Moore would have any knowledge.

A public entity cannot be sued under § 1983 based on vicarious liability for its employees. *Monell v. Department of Social Service of the City of New York*, 436 U.S. 658, 694 (1978). *Monell* liability may attach when an employee is acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker, or when a final policymaker ratified a subordinate's actions. *Thomas v.*

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

*Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). A plaintiff cannot raise a *Monell* claim for municipal liability in the absence of an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). If a person has suffered no constitutional injury at the hands of an individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point. *Id.*

*Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 397 (1997). That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Id.*

The requirement that a *Monell* claim establish a direct causal link makes it clear that a *Monell* claim is based on specific municipal action and a specific constitutional violation. Nowhere does Plaintiff specifically identify either the conduct or the constitutional violation to which his claims relate. Plaintiff relies on unsubstantiated allegations of systemic misconduct within LAPD. Plaintiff's argument therefore rests entirely on hearsay and puffery and does not establish that there is good cause for the deposition of Chief Moore.

Plaintiff makes numerous broad allegations within his Complaint regarding LAPD employees and supervisors, such as stating they permit constitutional violations and they fail to investigate violations.

Plaintiffs proudly states that not only do supervisors know that LAPD officers violation persons' constitutional rights, but they approve of such conduct.

Completely unable to provide any factual or legal basis for his desire to take

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

Chief Moore's deposition, Plaintiff is reduced to raising a multitude of conclusory allegations to support his efforts.

A *Monell* claim and a claim for supervisor liability must be predicated on a specific constitutional violation directly caused by a formal government policy. Absent a formal governmental policy, a plaintiff must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). The custom must be so persistent and widespread that it constitutes a permanent and well settled municipal policy. *Id*. Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy. *Id*. Plaintiff makes no attempt to cite a specific custom or policy causing a specific constitutional violation.

Plaintiff has offered no good cause for the taking of Chief Moore's deposition and Defendants' request for a Protective Order from the Court to preclude or stay the deposition of Chief Moore.

## III. <u>DEFENDANTS' ARGUMENT</u>

### A. CHIEF MOORE IS AN APEX WITNESS.

There is no dispute that Chief Moore is a high-ranking government official entitled to invoke the so-called apex deposition privilege. See *Anderson v. County of Contra Costa*, 2017 WL 930315 (N.D. Cal. Mar. 9, 2017) (finding the sheriff was "an apex employee or high-ranking official, to whom the apex doctrine applies"); *Myles v. County of San Diego*, 2016 WL 4366543, at *4 (finding the sheriff subject to the apex doctrine where plaintiff acknowledged he was the department's "chief policy maker and highest ranking government officer"); *K.C.R. v. Cty. of L.A.*, 2014 WL 3434257, at *6 (C.D. Cal. July 11, 2014) (collecting cases and concluding that "ample authority…supports the proposition that a sheriff is a

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

high-ranking government official entitled to protection"). The burden is therefore on Plaintiff to demonstrate that Chief Moore has unique firsthand, non-repetitive knowledge of the facts at issue in the case and to show that Plaintiff has exhausted other less intrusive discovery methods to obtain the information they seek. Plaintiff has failed to meet the burden imposed on him.

Chief Moore does not have firsthand knowledge of facts relevant to the lawsuit. He does not have firsthand or direct knowledge of the incident, investigation, training issues, and/or policy issues involved herein. Instead, all of Chief Moore's information on the incident is secondhand from legal counsel, internal affairs directors, and other individuals with personal knowledge. Moreover, Chief Moore is not the person most knowledgeable regarding individual officer training or the training practices in effect at the time of the incident, and he was not the person most knowledgeable regarding the research, preparation, and implementation of the applicable policies and procedures.

Additionally, Plaintiff has not exhausted all other less intrusive means of discovery. Plaintiff has already indulged in extensive discovery early on in this matter, serving on Defendants no less than five sets of Requests for Production of Documents and four sets of Interrogatories; the majority of which Plaintiff propounded before he was allowed to do so. Defendants have responded to all of Plaintiff's written discovery requests, produced all documents responsive to the requests for production, and will be producing Officers Peters, Muro, Clark, Chacon, and McPheeters for deposition. Yet after this premature and burdensome excess of discovery, Plaintiff has failed to state what specific information they were unable to obtain from other sources that justifies his efforts to depose Chief Moore. In fact, Plaintiff noticed the deposition of Chief Moore to take place *prior*[1] to any other officer depositions, further cementing

[1] Chief Moore's deposition was noticed for 12 p.m. noon on March 1, 2023, while the other officers' depositions were noticed to begin at 1 p.m. Harris Decl. ¶ 2, Exh.

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITA 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

Defendants' argument that the main purpose for taking Chief Moore's deposition is not to garner information, but instead to annoy, embarrass, oppress, and unduly burden Defendants by creating unnecessary delay and needlessly increasing the cost of litigation.

It is entirely too early at this stage of litigation to require Chief Moore's deposition, if ultimately required at all.

**a. Defendants Request and The Court Has Authority to Issue A Protective Order Prohibiting the Deposition of Chief Moore.**

The Court's power to control the scope and terms of discovery is a fundamental component of its authority.

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery…

*Fed. R. Civ. P. 26(c)(1).* Under Fed. R. Civ. P. 26(b)(2)(C), the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1). *Fed. R. Civ. P. 26(b)(2)(C)(iii).*

A court in its discretion may issue orders for the protection of parties in the taking of depositions. *In re Penn Cent. Sec. Litig.*, 347 F. Supp. 1347, 1348 (E.D. Pa. 1972). The extent that a party may go in seeking discovery is subject to protective

---

A.

orders that the judge may make under Rule 30(b) or (d). *Chem. & Indus. Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962). Under the rules, the extent of discovery and the use of protective orders is clearly within the discretion of the trial judge. *Id*. With regard to the authority of the Court in granting protective orders, it is clear that the Court is vested with broad discretion in this regard under Rule 30(b) of the Federal Rules of Civil Procedure. *Textured Yarn Co. v. Burkart-Schier Chem. Co.*, 41 F.R.D. 158, 160 (E.D. Tenn. 1966). The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion. *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973).

All that is needed for the moving party to obtain a protective order preventing a deposition is for the part to present good cause. The burden to show good cause is on the party seeking the protective order. *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007). According to Rule 26 of the Federal Rules of Civil Procedure, the court may, upon a motion by a party, and for good cause shown, make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *Great W. Life Assur. Co. v. Levithan*, 152 F.R.D. 494, 496 (E.D. Pa. 1994). A party seeking a protective order under Rule 26 bears the burden of demonstrating the "good cause" required to support such an order. *Id*.

As the arguments outlined below will demonstrate, good cause exists to support a protective order prohibiting the deposition of Chief Moore, and Defendants' motion should be granted.

**b. Good Cause Exists for the Court to Issue A Protective Order to Preclude or Stay the Deposition of Chief Moore.**

Heads of government agencies are not normally subject to deposition. *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979); see also *Stagman v. Ryan* (7th Cir. 1999) 176 F3d 986, 994-995; *Lederman v. New York City Dept. of Parks & Recreation* (2nd Cir. 2013) 731 F3d 199, 203. Top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

reasons for taking official actions. *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985).

The U.S. Supreme Court expressed a rationale for this general rule in *United States v. Morgan*, 313 U.S. 409, which involved the taking of the deposition of the Secretary of Agriculture in a lawsuit brought to set aside an order issued by the Secretary that set the maximum rates to be charged by market agencies for their services at the Kansas City Stockyards. *Morgan*, 313 U.S. 409 at 421–22. The Secretary was questioned regarding the process by which he reached his order, including the manner and extent of his study of the record and his consultation with subordinates. *Id*. His testimony showed that he dealt with the enormous record in a manner similar to the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. *Id*. The Court determined that the Secretary should never have been subjected to such an examination. *Id*. The proceeding before the Secretary had a quality resembling that of a judicial proceeding, and just as a judge cannot be subjected to such scrutiny, so the integrity of the administrative process must be equally respected. *Id*.

The reason for requiring exigency before allowing the testimony of high officials is obvious. *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993). High ranking government officials have greater duties and time constraints than other witnesses. *Id*. In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that parties show a special need or situation compelling such testimony. *Id*. The courts must remain mindful of the requirement that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted. *In re Off. of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991). It would be oppressive and vexatious to require a government official to submit to a deposition that would disturb government business. See *Capitol Vending Co. v. Baker*, 36 F.R.D. 45, 46 (D.D.C 1964). An exception to this general rule exists concerning top officials who have direct personal factual information pertaining to

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

material issues in an action. *Church of Scientology of Bos. v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990). A top government official may, however, only be deposed upon a showing that the information to be gained from such a deposition is not available through any other source. *Id*.

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, a court has discretion to limit discovery where the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive. *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 262–63 (N.D. Cal. 2012). As a threshold matter, an official objecting to a deposition must first establish that she is sufficiently "high-ranking" to invoke the deposition privilege; once a court determines that an official is entitled to invoke the privilege, the burden shifts to the party seeking to depose the high-ranking official. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010), *order clarified,* No. 1:05CV01198LJOJMDHC, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010). After this threshold showing has been met, a court must then consider (1) whether the deponent has unique firsthand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods. *Apple Inc.*, 282 F.R.D. 259 at 263.

As stated above, there is no dispute that Chief Moore is a high-ranking government official entitled to invoke the so-called apex deposition privilege. See *Anderson v. County of Contra Costa*, 2017 WL 930315 (N.D. Cal. Mar. 9, 2017) (finding the sheriff was "an apex employee or high-ranking official, to whom the apex doctrine applies"); *Myles v. County of San Diego*, 2016 WL 4366543, at *4 (finding the sheriff subject to the apex doctrine where plaintiff acknowledged he was the department's "chief policy maker and highest ranking government officer"); *K.C.R. v. Cty. of L.A.*, 2014 WL 3434257, at *6 (C.D. Cal. July 11, 2014) (collecting cases and concluding that "ample authority…supports the proposition that a sheriff is a high-ranking government official entitled to protection").

Plaintiff needs to demonstrate how Chief Moore has unique firsthand, non-

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

repetitive knowledge of the facts at issue in the case and to show that Plaintiff has exhausted other less intrusive discovery methods to obtain the information they seek. Instead, he relies on expansive and nebulous allegations of misconduct by LAPD members and vague references to reports purportedly containing allegations of wrongdoing by LAPD to justify his desire to take Chief Moore's deposition. He argues that LAPD has declined to cooperate with efforts to increase transparency within the Police Department and that Chief Moore has taken inadequate steps to address alleged deficiencies within the Police Department. Missing from these ambiguous recriminations is any explanation as to how any of these claims relate to facts at issue in this case. Plaintiff makes no effort to explain what information concerning the events of September 9, 2019 he seeks to obtain from Chief Moore. Plaintiff instead implies that because he is raising claims alleging misconduct by members of LAPD, Chief Moore must be called to answer to them for those allegations. Plaintiff does not reference any unique firsthand, non-repetitive knowledge that only Chief Moore can provide.

In *Est. of Levingston v. Cty. of Kern*, 320 F.R.D. 520 (E.D. Cal. 2017), a decedent's survivors brought multiple claims for constitutional violations against the Kern County Sheriff's Department and Sheriff Donny Youngblood, specifically alleging claims for wrongful death and supervisor liability under 42 U.S.C. § 1983 against Sheriff Youngblood. *Levingston*, 320 F.R.D. 520 at 522-523. The district court granted a motion brought by defendants for a protective order to prevent Sheriff Youngblood's deposition. *Id*.

Defendants' motion for a protective order was brought on the grounds that Sheriff Youngblood was a high-ranking official and therefore entitled to invoke the so-called "apex deposition privilege." Id. at 526. Defendants argued that Sheriff Youngblood had no firsthand knowledge of facts relevant to the lawsuit, and noted that a purpose to harass or annoy may be inferred where there is no showing a high-ranking official has relevant and personal knowledge about the facts at issue. *Id*.

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

Defendants also argued that Sheriff Youngblood had no firsthand or direct knowledge of the incident, investigation, autopsy, training issues, and/or policy issues on mental health/disabled persons, but rather that all of Sheriff Youngblood's information on the incident was secondhand, primarily from legal counsel, command staff, and department supervisors. *Id*. at 527. Moreover, Sheriff Youngblood was not the person most knowledgeable regarding individual deputies' training or the training practices in effect at the time of the incident and he was not the person most knowledgeable regarding the research, preparation, and/or implementation of the applicable policies and procedures. *Id*.

Plaintiffs argued that Sheriff Youngblood had firsthand, non-repetitive information relating to his own liability in the case because he was sued in both his official and individual capacities and because he approved the overall training regime. *Id*. at 527. Plaintiffs argued that Sheriff Youngblood's personal knowledge of the approaches and whether or not they had in fact been implemented were directly relevant to the constitutional violations sustained by decedent and that he had unique personal knowledge regarding his actions or inactions in response to prior constitutional violations committed at the hands of Kern County Sheriff Deputies under his watch, such as acting or failing to act to impose discipline or adopt new policies for preventing future uses of excessive force, and his supporting reasons. *Id*.

The only argument that plaintiffs raised to support their position that Sheriff Youngblood was a better source for the sought after information than those who developed and implemented the policies at issue was that they did not believe that Sheriff Youngblood did not have more knowledge than the employees who developed, administered, and trained on the policies. *Id*. at 528.

Here, Plaintiff relies on a litany of broad, nebulous allegations of misconduct by LAPD and insist that this serves as a basis to permit him to ask Chief Moore general questions relating to allegations of Department-wide actions, LAPD responses to traffic violations, LAPD training protocols, and Plaintiff's beliefs on

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

LAPD's lack of transparency. Plaintiff makes no attempt whatsoever to explain how any of those issues relate to his *Monell* claim and claim for supervisor liability in connection with the events of September 9, 2019. If he cannot explain what specific information relating to this matter he seek from Chief Moore, that he cannot gain from others with personal knowledge, he cannot claim to have made any serious efforts to obtain that information from some other source.

The facts and issues raised in *Levingston* are nearly identical to those in this case. The applicable analysis is no different and leads to the same conclusion. Defendants are entitled to a protective order from the Court precluding or staying the deposition of Chief Moore.

**c. Plaintiff Has Failed to Provide Any Justification for the Taking of the Deposition of Chief Moore.**

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

Plaintiff raises a *Monell* claim against Chief Moore and argues that the deposition of Chief Moore is necessary to obtain information relevant to those claims that cannot be obtained from any other source. Plaintiff's argument fails, however, to identify a specific constitutional violation relating to the facts of this matter concerning which Chief Moore would have any knowledge.

A public entity cannot be sued under § 1983 based on vicarious liability for its employees. *Monell v. Department of Social Service of the City of New York*, 436 U.S. 658, 694 (1978). *Monell* liability may attach when an employee is acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker, or when a final policymaker ratified a subordinate's actions. *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). A plaintiff cannot raise a *Monell* claim for municipal liability in the absence of an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). If a person has suffered no constitutional injury at the hands of an individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point. *Id.*

If Plaintiff is to demonstrate that the deposition of Chief Moore is necessary to obtain information relating to his *Monell* or supervisor liability claims, Plaintiff must identify the specific constitutional violation at issue and demonstrate how it is a direct result of a specific policy or custom and how these relate to information solely within Chief Moore's knowledge. Plaintiff merely argues that because various third-parties have alleged misconduct by LAPD and because Chief Moore is the head of the Department, Plaintiff is entitled to take his deposition and ask him questions about the general operations and administrative procedures of the Police Department.

*Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 397 (1997). That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Id*.

The requirement that a *Monell* claim establish a direct causal link makes it clear that a *Monell* claim is based on specific municipal action and a specific constitutional violation. Nowhere does Plaintiff specifically identify either the conduct or the constitutional violation to which his claims relate. He relies instead on vague, nebulous allegations of systemic misconduct and insist that a deposition is needed to obtain information regarding the general operations of LAPD. This argument is inadequate and does not establish that there is good cause for the deposition of Chief Moore.

Plaintiff has offered no good cause for the taking of Chief Moore's deposition and Defendants' request for a protective order from the Court prohibiting the deposition of Chief Moore should be granted.

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

### B. DEFENDANTS OPPOSE THE LOCATION OF ALL DEPOSITIONS.

Plaintiff noticed the depositions of Chief Moore, Officer Peters, Officer Muro, Officer Clark, Officer Chacon, and Officer McPheeters to be taken at Plaintiffs' counsel's outdoor patio at his residence in Venice Beach, California. Plaintiff stated that the reason he wants to conduct the depositions at this location is due to COVID-19. Though Defendants do not disagree that the COVID-19 deposition is still a cause for concern, taking depositions outdoors on Plaintiff's counsel's private residential patio is unprofessional, impractical, and unreasonable. Besides the potential noise, interruptions, and inclement weather, internet is required for both the court reporter's services and displaying exhibits (such as body worn camera videos).

Defendants do not disagree that COVID-19 is still a cause for concern. However, since the beginning of the COVID-19 pandemic, the courts and legal field generally have been very accommodating in allowing virtual or remote depositions. Defendants put this suggestion forward for all depositions that take place in this matter.

As much as Plaintiff's counsel would like to make Defendants out to be unreasonable, Defendants are not objecting to Plaintiff taking the depositions of Officers Muro, Peters, Clark, Chacon, and McPheeters. Defendants simply request to take and defend depositions in a more practical location or virtually, as typically done in the practice of law. The Court should award Defendants sanctions for the time spent on opposing this frivolous motion.

## IV. <u>DEFENDANTS' CONCLUSION</u>

It is evident that Plaintiff seeks to take the deposition of Chief Moore to annoy, oppress, and unduly burden Defendants by creating unnecessary delay and needlessly increasing the cost of litigation. As a high-ranking government official, Chief Moore should not be required to have his deposition taken in this matter absent extraordinary circumstances.

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

Plaintiff has offered no good cause for the taking of Chief Moore's deposition and Defendants' request for a Protective Order to preclude or stay the deposition of Chief Moore should be granted.

DATED: March 16, 2023 HURRELL CANTRALL LLP

By: */s/ Hilary Harris*
THOMAS C. HURRELL
HILARY HARRIS
Attorneys for MICHEL MOORE, J. PETERS, E. MURO, CLARK, N. CHACON and BEN MCPHEETERS

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Hilary Harris, State Bar No. 339697
E-Mail: hharris@hurrellcantrall.com
HURRELL CANTRALL LLP
725 S. Figueroa Street, Suite 3800
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for MICHEL MOORE, J. PETERS, E. MURO, CLARK, N. CHACON and BEN MCPHEETERS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| G. ASHLEY,<br><br>Plaintiff,<br><br>v.<br><br>MICHEL RAY MOORE, ERIC MICHAEL GARCETTI, GILBERT CEDILLO, PAUL KREKORIAN, ROBERT BLUMENFIELD, NITHYA RAMAN, PAUL KORETZ, NURY MARTINEZ, MONICA RODIGUEZ, MARQUEECE-HARRIS, MARK RIDLEY-THOMAS, MICHAEL JOSEPH BONIN, JOHN LEE, MITCH O'FARRELL, KEVIN DE LEON, JOSEPH BUSCAINO, WILLIAM J. BRIGGS II, EILEEN DECKER, DALE BONNER, MARIA LOU CALANCHE, STEVE SOBOROFF, LAPD OFFICERS J. PETERS 37707, E. MURO 36863, CLARK 39587, N. CHACON, B. McPHEETERS 30483, and 10 UNKNOWN NAMED DEFENDANTS, 1-10,<br><br>Defendant. | Case No. 2:22-cv-04909-DMG (KSx)<br><br>**DECLARATION OF HILARY HARRIS, ESQ.**<br><br>DISCOVERY MATTER: CHIEF MAGISTRATE JUDGE KAREN L. STEVENSON |

I, Hilary Harris, declare:

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

1. I am an attorney duly licensed to practice before this Court and am an associate with Hurrell Cantrall LLP, attorneys of record for MICHEL MOORE, J. PETERS, E. MURO, CLARK, N. CHACON and BEN MCPHEETERS herein. The facts set forth herein are of my own personal knowledge and if sworn I could and would testify competently thereto.

2. On February 10, 2023, Plaintiff served a FRCP R. 30 Notice of Deposition of Defendant Chief Michel Moore unilaterally setting the deposition for March 1, 2023 at 12 p.m. noon. Exhibit A.

3. On February 16, 2023, in a 4-page letter, Chief Moore objected to the Notice and advised that he would seek a protective order and requested to meet and confer asserting that the "deposition of Chief Moore in this case was unnecessary and improper," and provided legal authority arguing that there is no good cause to depose the Sheriff as he "has no personal knowledge of the events of September 9, 2019," and setting forth legal authority supporting his assertions. Exhibit B.

4. On February 22, 2023, Plaintiff's counsel responded to Chief Moore's assertions stating he would not appear on March 7, 2023 for a meet and confer conference. Exhibit C.

5. On February 28, 2023, Plaintiff sent Defense counsel Plaintiff's portions of a joint stipulation to compel. Defense counsel reminded Plaintiff's counsel via telephone call that an informal discovery conference was required with this court, prior to litigating any discovery matters through briefing.

6. Only then did Plaintiff's counsel email this court's clerk requesting an informal discovery conference.

7. On March 3, 2023 at 3:00 p.m., all counsel appeared for a telephonic conference with Chief Magistrate Judge Karen L. Stevenson. Dkt. No. 59.

8. Chief Magistrate Judge Stevenson ordered briefing on the discovery disputes to be filed in the Joint Stipulation format. Dkt. No. 59.

9. Plaintiff's counsel did not send updated drafts of the Joint Stipulation

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

to compel regarding these deposition discovery disputes to Defense counsel in order to insert Defendants' portions, as required for the Joint Stipulation format.

10. On March 12, 2023, Plaintiff's counsel filed his motion to compel depositions without notice to Defendants and without giving Defendants the requisite 7 day time to insert their portions of the Joint Stipulation, pursuant to L.R. 6.9, 7.9, and 7.10. Dkt. No. 65.

11. Defendants Peters, Muro, Chacon, Clark, and McPheeters are *not* objecting to having their depositions taken; they are only objecting to the location of the depositions.

12. Chief Moore stands by his objections and request for protective order.

13. Defense counsel requests sanctions against Plaintiff's counsel for his gamesmanship in litigating these discovery disputes.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 16, 2023, at Los Angeles, California.

*/s/ Hilary Harris*
Hilary Harris

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

# EXHIBIT "A"

Hurrell Cantrall LLP
Received: 2/13/2023
c/m# 358-036-2,111
Dates to be Entered
obo Mail - 2/21
The attorney, whose initials appear below, has reviewed the applicable court rules, and has verified that the above dates are correct.
Atty:
POS DATE:
Received via: Fed ex, hand, mail, fax
or Other
Routed to: MG /JT/LF/EB/JE
Processed by: Jose Rivera
Doc(s) scanned: Y or N

STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **G. ASHLEY,**<br>Plaintiff,<br>vs.<br>**MICHEL REY MOORE**, *et al.*,<br>Defendants. | 2:22-cv-04909-DMG(KSx)<br>**NOTICE OF DEPOSITION ON ORAL EXAMINATION** |

**PLEASE TAKE NOTICE** that the attorneys listed above will depose on oral examination on behalf of their client at the following address, on the date and at the times set forth below, the defendants whose names are listed below, and that said deposition will be recorded by a certified shorthand reporter. Any party who wishes to record the deposition by any other permissible means my do so.

**YAGMAN + REICHMANN, LLP**

By: /s/ Stephen Yagman
**STEPHEN YAGMAN**

//

//

//

Deponents/Defendants:

MOORE, noon
J. PETERS 37708, 1:00 p.m.
E. MURO 36863, 1:30 p.m.
CLARK 39587, 2:00 p.m.
N. CHACON, 2:30 p.m.
B. McPHEETERS 30483, 3:00 p.m.

Location: 38 28th Avenue, Venice Beach, CA 90291
Date: March 1, 2023

# DECLARATION OF SERVICE

I am a member of the Bar of this Court, am not a party to the within action, and my business address is 333 Washington Blvd., Venice Beach, California 90292. On the date set forth above my signature below, I served the preceding paper on all interested parties whose names and whose addresses are listed below the signature line, by placing true copies thereof enclosed in sealed envelopes with full postage thereon fully prepaid in the United States mail at Los Angeles, California.

I declare the foregoing to be true under the penalty of perjury at Los Angeles, California on the date stamped on the signature line, below.

02-10-23
/s/ Stephen Yagman
SIGNATURE

SERVICE LIST

Hilary Harris, Hurrell Cantrall LLP
725 S Figueroa St., Ste. 3800
Los Angeles, CA 90017-5438

# EXHIBIT "B"

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

February 16, 2023

**VIA U.S. MAIL**

Stephen Yagman
Yagman and Reichmann LLP
333 Washington Boulevard
Venice Beach, CA 90292-5152

Re: **G. Ashley v. Michel Ray Moore, et al.**
Case No.: 2:22-cv-04909-DMG (KSx)
Our File No.: 355-036-2,111

Dear Mr. Yagman:

On February 10, 2023, our office received Plaintiff's Notice of Deposition of Defendant Michel Moore. As you are no doubt aware, taking the deposition of Chief Moore in this case is both unnecessary and improper. If you insist on pressing forward with trying to take Chief Moore's deposition, we will consider it necessary to file a motion for a protective order from the court prohibiting the taking of Chief Moore's deposition. This letter is an effort to meet and confer with you in compliance with *L.R. 7-3* and *L.R. 37-1* through *37-4* to avoid the need for the filling of a discovery motion. We are available to meet with you on Wednesday, March 7, 2023 at 10:00 a.m. at our office, located at 725 South Figueroa St, Suite 3800, Los Angeles, CA 90017, to discuss this matter and find a way to resolve this issue amicably. For now, our position with respect to a potential deposition of Chief Moore and the legal authorities in support of our position are laid out below.

Put simply, there is no good cause for taking Chief Moore's deposition. He has no personal knowledge regarding the events of September 9, 2019 which form the basis of Plaintiff's Complaint for Damages, nor was he personally involved in those events. Moreover, none of the evidence produced by the parties thus far in this case indicates that Chief Moore possesses firsthand knowledge of any facts relevant to the determination of this case, or that he possesses any information that cannot be more expediently obtained from some other source.

More importantly, heads of government agencies are not normally subject to deposition. *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979). Top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions. *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985).

HURRELL CANTRALL LLP



The U.S. Supreme Court expressed a rationale for this general rule in *United States v. Morgan*, 313 U.S. 409, which involved the taking of the deposition of the Secretary of Agriculture in a lawsuit brought to set aside an order issued by the Secretary that set the maximum rates to be charged by market agencies for their services at the Kansas City Stockyards. *Morgan*, 313 U.S. 409 at 421–22. The Secretary was questioned regarding the process by which he reached his order, including the manner and extent of his study of the record and his consultation with subordinates. *Id.* His testimony showed that he dealt with the enormous record in a manner similar to the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. *Id.* The Court determined that the Secretary should never have been subjected to such an examination. *Id.* The proceeding before the Secretary had a quality resembling that of a judicial proceeding, and just as a judge cannot be subjected to such scrutiny, so the integrity of the administrative process must be equally respected. *Id.*

The reason for requiring exigency before allowing the testimony of high officials is obvious. *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993). High ranking government officials have greater duties and time constraints than other witnesses. *Id.* In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that parties show a special need or situation compelling such testimony. *Id.* The courts must remain mindful of the requirement that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted. *In re Off. of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991). It would be oppressive and vexatious to require a government official to submit to a deposition that would disturb government business. See *Capitol Vending Co. v. Baker*, 36 F.R.D. 45, 46 (D.D.C 1964). An exception to this general rule exists concerning top officials who have direct personal factual information pertaining to material issues in an action. *Church of Scientology of Bos. v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990). A top government official may, however, only be deposed upon a showing that the information to be gained from such a deposition is not available through any other source. *Id.*

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, a court has discretion to limit discovery where the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive. *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 262–63 (N.D. Cal. 2012). As a threshold matter, an official objecting to a deposition must first establish that she is sufficiently "high-ranking" to invoke the deposition privilege; once a court determines that an official is entitled to invoke the privilege, the burden shifts to the party seeking to depose the high-ranking official. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010), *order clarified,* No. 1:05CV01198LJOJMDHC, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010). After this threshold showing has been met, a court must then consider (1) whether the deponent has unique firsthand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods. *Apple Inc.*, 282 F.R.D. 259 at 263.

In *Est. of Levingston v. Cty. of Kern*, 320 F.R.D. 520 (E.D. Cal. 2017), a decedent's survivors brought multiple claims for constitutional violations against the Kern County Sheriff's Department and Sheriff Donny Youngblood, specifically alleging claims for wrongful death and supervisor liability under 42 U.S.C. § 1983 against Sheriff Youngblood. *Levingston*, 320 F.R.D. 520 at 522-523. The district court granted a motion brought by defendants for a protective order to prevent Sheriff Youngblood's deposition. *Id.*

Defendants' motion for a protective order was brought on the grounds that Sheriff Youngblood was a high-ranking official and therefore entitled to invoke the so-called "apex deposition privilege." Id. at 526. Defendants argued that Sheriff Youngblood had no firsthand knowledge of facts relevant to the lawsuit, and noted that a purpose to harass or annoy may be inferred where there is no showing a high-ranking official has relevant and personal knowledge about the facts at issue. *Id.* Defendants also argued that Sheriff Youngblood had no firsthand or direct knowledge of the incident, investigation, autopsy, training issues, and/or policy issues on mental health/disabled persons, but rather that all of Sheriff Youngblood's information on the incident was secondhand, primarily from legal counsel, command staff, and department supervisors. *Id.* at 527. Moreover, Sheriff Youngblood was not the person most knowledgeable regarding individual deputies' training or the training practices in effect at the time of the incident and he was not the person most knowledgeable regarding the research, preparation, and/or implementation of the applicable policies and procedures. *Id.*

Plaintiffs argued that Sheriff Youngblood had firsthand, non-repetitive information relating to his own liability in the case because he was sued in both his official and individual capacities and because he approved the overall training regime. *Id.* at 527. Plaintiffs argued that Sheriff Youngblood's personal knowledge of the approaches and whether or not they had in fact been implemented were directly relevant to the constitutional violations sustained by decedent and that he had unique personal knowledge regarding his actions or inactions in response to prior constitutional violations committed at the hands of Kern County Sheriff Deputies under his watch, such as acting or failing to act to impose discipline or adopt new policies for preventing future uses of excessive force, and his supporting reasons. *Id.*

The only argument that plaintiffs raised to support their position that Sheriff Youngblood was a better source for the sought after information than those who developed and implemented the policies at issue was that they did not believe that Sheriff Youngblood did not have more knowledge than the employees who developed, administered, and trained on the policies. *Id.* at 528.

The facts and issues raised in *Levingston* are nearly identical to those in this case. The applicable analysis is no different and leads to the same conclusion.

It is our office's philosophy to cooperate with opposing counsel to avoid needless expense and delay occasioned by unwarranted discovery disputes. We are confident that we will be able to resolve this matter easily when we meet and confer. We look forward to speaking with you then.

Very truly yours,

HURRELL CANTRALL LLP

THOMAS C. HURRELL
HILARY HARRIS

TCH:HH

# EXHIBIT "C"

Hurrell Cantrall LLP
Received 2/24/2023
c/m# 355-036-2,111
Dates to be Entered
The attorney, whose initials appear below, has reviewed the applicable court rules, and has verified that the above dates are correct.
Atty:
POS DATE:
Received via: Fed ex, hand, mail, fax or Other
Routed to: MG /JT/LF/EB/JE
Processed by: Jose Rivera
Doc(s) scanned: Y or N

LAW OFFICES

YAGMAN + REICHMANN, LLP

333 WASHINGTON BOULEVARD
VENICE BEACH, CALIFORNIA 90292-5152
(310) 452-3200

February 22, 2023

Hilary Harris
725 S. Figueroa St., Ste. 3800
L.A., CA 90017

Re: *Ashley v. Moore*

Dear Ms. Harris:

This letter is written in response to your Feb. 16, 2023 discovery meeting letter, that was received on Feb. 21.

Your letter and its request for a discovery meeting does not comply with L.R. 37-1, which requires that a meeting be held within 10 days after service of a discovery meeting letter: Since your letter was served on Feb. 16, the meeting is required to be held no later than Feb. 26, yet you request a meeting on March 7, which is 19 days after service of your letter. Therefore, I shall not meet on March 7, as you request.

You state that you wish to "resolve this issue [of plaintiff deposing defendant Moore] amicably" and that "[it] is [your] office's philosophy to cooperate with opposing counsel to avoid needless expense and delay occasioned by unwarranted discovery disputes[,]" that you "are confident that we will be able to resolve this matter easily when we meet and confer" and that you "look forward to speaking with you then."

These platitudes mask what really is going on. To date your behavior with respect to discovery has been the opposite of what you state, as you well-know. This matter will not be resolved absent the court issuing a protective order to prevent plaintiff from deposing defendant Moore.

However, in the real spirit of cooperation, I shall meet with you immediately after the depositions noticed to be taken on March 1 are concluded, which is six days *before*

LAW OFFICES
YAGMAN + REICHMANN, LLP
333 WASHINGTON BOULEVARD
VENICE BEACH, CALIFORNIA 90292-5152
(310) 452-3200

the March 7 date proposed by you; but that meeting will not result in a resolution of the dispute.

The law requires that defendant Moore be produced to be deposed on March 1 unless you will have obtained a protective order excusing him to appear *before* March 1.

Very truly yours,

STEPHEN YAGMAN

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| G. ASHLEY,<br><br>Plaintiff,<br><br>v.<br><br>MICHEL RAY MOORE, ERIC MICHAEL GARCETTI, GILBERT CEDILLO, PAUL KREKORIAN, ROBERT BLUMENFIELD, NITHYA RAMAN, PAUL KORETZ, NURY MARTINEZ, MONICA RODIGUEZ, MARQUEECE-HARRIS, MARK RIDLEY-THOMAS, MICHAEL JOSEPH BONIN, JOHN LEE, MITCH O'FARRELL, KEVIN DE LEON, JOSEPH BUSCAINO, WILLIAM J. BRIGGS II, EILEEN DECKER, DALE BONNER, MARIA LOU CALANCHE, STEVE SOBOROFF, LAPD OFFICERS J. PETERS 37707, E. MURO 36863, CLARK 39587, N. CHACON, B. McPHEETERS 30483, and 10 UNKNOWN NAMED DEFENDANTS, 1-10,<br><br>Defendant. | Case No. 2:22-cv-04909-DMG (KSx)<br><br>**[PROPOSED] PROTECTIVE ORDER**<br><br>DISCOVERY MATTER: Chief Magistrate Judge Karen L. Stevenson<br><br>Judge: Hon. Dolly M. Gee<br><br>Trial Date: 04/09/24 |

Having considered the Joint Stipulation of the Parties Regarding Plaintiff's Request to Depose Chief Moore and Defendants' Request for a Protective Order to Preclude or Stay the Deposition of CHIEF MICHEL MOORE, the Declaration of Hilary Harris and attached exhibits, and finding there is Good Cause, the Court hereby Orders that:

/ / /

/ / /

1. The deposition of CHIEF MICHEL MOORE cannot proceed.

2. Plaintiff is precluded from taking the deposition of CHIEF MICHEL MOORE.

DATED:

By: ______________________________
THE HON. KAREN L. STEVENSON
UNITED STATED CHIEF
MAGISTRATE JUDGE

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000